E-FILED; Prince George's Circuit Court
Docket: 8/15/2025 3:42 PM; Submission: 8/15/2025 3:42 PM
Envelope: 22518248

## IN THE CIRCUIT COURT OF MARYLAND FOR
## PRINCE GEORGE'S COUNTY

RB

| | | |
|---|---|---|
| ELENA PEREIRA | * | |
| 4804 Olympia Ave. | * | |
| Beltsville, MD 20705 | * | |
| | * | |
| *Plaintiff,* | * | Case No. _____ C-16-CV-25-004615 |
| | * | |
| v. | * | |
| | * | |
| FREEDOM FOREVER MARYLAND, LLC | * | |
| 43445 Business Park Drive, Suite 104 | * | **JURY TRIAL DEMANDED** |
| Temecula, CA 92590 | * | |
| *Serve on:* | * | |
| CSC-Lawyers Incorporating Svc. Co. | * | |
| 7 St. Paul Street, Suite 820 | * | |
| Baltimore, MD 21202 | * | |
| | * | |
| *Defendant.* | * | |

*************************************************************************

### COMPLAINT

Plaintiff, Elena Pereira, by and through undersigned counsel, files this Complaint against Defendant, Freedom Forever Maryland, LLC, and states as follows:

### PARTIES JURISDICTION AND VENUE

1.    Plaintiff, Elena Pereira, is an adult individual who owns a single-family residence located at 4804 Olympia Avenue, Beltsville, MD 20705.

2.    Defendant, Freedom Forever, LLC, ("Freedom Forever") is a foreign limited liability company organized under the laws of the State of Delaware with a principal office at 43445 Business Park Drive, Suite 104, Temecula, CA 92590, does business in Prince George's County, Maryland, and is registered to do business in Maryland.

3.    This Court has subject matter jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, which grants the circuit courts original jurisdiction over all civil actions in which equitable relief is sought or where the amount in controversy exceeds $30,000, exclusive of interest and costs.

4.     This Court has personal jurisdiction over the Defendant pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), as the Defendant regularly conducts business in Maryland, contracted to supply services and goods in Maryland, and caused tortious injury in Maryland by acts or omissions within the state.

5.     Venue is proper in the Circuit Court for Prince George's County, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), because the events giving rise to this action occurred in Prince George's County, the Plaintiff resides in Prince George's County, and the property that is the subject of this dispute is located in Prince George's County.

6.     Specifically, the Plaintiff, Elena Pereira, resides at 4804 Olympia Avenue, Beltsville, Maryland 20705, which is in Prince George's County. The Defendant marketed, sold, financed, and installed the solar energy system at this location, and their conduct has caused harm to the Plaintiff within this jurisdiction.

### STATEMENT OF FACTS

7.     Plaintiff, Elena Pereira, owns a single-family home in Beltsville, MD. Ms. Pereira is 73 years old and lives on a fixed income. To afford her home, Ms. Pereira rents out rooms in her home to several tenants. Ms. Pereira moved to the United States from Brazil, and although she speaks and understands some English, her native language is Brazilian Portuguese.

8.     Ms. Pereira's electrical utility provider is Pepco. Her house is also supplied with natural gas, which is used to heat her home.

9.     On or about July 13, 2022, a salesperson from Freedom Forever named Thiego Freitas visited Ms. Pereira's home to discuss the installation of a residential solar panel system ("System"). Mr. Freitas is also Brazilian, and Ms. Pereira felt comfortable talking with him in her native language.

10.     During this meeting, Mr. Freitas informed Ms. Pereira that he was selling residential solar systems for Freedom Forever, and that she could save money on her electricity bills if she signed up to have the System Installed on the roof of her home. Mr. Freitas informed her that Freedom Forever would need to remove a large tree from her front yard and replace the roofing on the front of her home. Mr. Freitas informed Ms. Pereira that all these costs would be included.

11.     Mr. Freitas presented Ms. Pereira with his computer and obtained her signature after instructing her on where to sign. Mr. Thiego did not explain what Ms. Pereira was signing. Despite Ms. Pereira's clear indication that she did not regularly use email or computers—relying instead on limited smartphone usage—she did not receive any paper or electronic copies in her native language.

12.     What Ms. Pereira signed was an agreement ("Agreement") to participate in the Freedom Forever – Vivint Smart Home Promotion. This Agreement outlines the terms for the installation of the System. A true and correct copy of the Agreement is attached as **Exhibit 1**.

13.     The Agreement included a "partial reroof" of Ms. Pereira's home.

14.     The Agreement excluded tree work, structural engineering, and other costs as follows:

2.2    Exclusions. Any alteration or deviation from the above specifications, including but not limited to any additional material and/or any labor costs incurred by such alteration or deviation, are not part of the Work, and shall only be executed pursuant to <u>ARTICLE 6</u> of this Agreement, with the costs solely borne by the Customer. These alteration and deviation include but are not limited to:

a.   Upgrade of existing main service panels, sub-panels or switchboards (if necessary)
b.   Upgrade, replacement or repair of existing roof, or supporting roof structure.
c.   Tree removal, fencing, weed abatement, curbing, gravel or landscaping.
d.   Non-standard groundwork (such as on difficult soil conditions).
e.   Additional grading, rock/boulder removal, blasting; coring; soil testing, compaction for footings, and trenching.
f.   Structural engineering calculations or analysis of existing structures.
g.   Habitat studies, additional inspections or fees of any type.
h.   Additional permitting requirements by local building authorities or jurisdictions, such as zoning, land use, architecture, planning, habitat, environmental, etc.
i.   Additional exclusions described on page one of this Agreement, initialed by both Parties.

15.     On July 13, 2022, at 12:20 pm, Ms. Pereira received an email from Freedom Forever with an electronic copy of the Agreement. According to the Agreement, the total installed System price, including all finance charges, was $32,857.55. She was unable to understand the Agreement because she could only read it on her phone, and it was not in her native language.

16.     At 2:38 pm on July 13, 2022, Ms. Pereira received an email stating that she had been approved for third-party financing with a loan amount of up to $75,000. However, Ms. Pereira did not receive a copy of any loan documents.

17.     The alleged loan included additional costs beyond the System itself, such as costs for roof replacement and tree removal, which Mr. Freitas, the Freedom Forever salesperson, arranged. These additional costs were not disclosed in the Agreement or the alleged loan.

18.     In late 2022 or early 2023, Freedom Forever, through its subcontractor, replaced the roofing materials on the southern face of Ms. Pereira's home, removed a large tree in her front yard, and installed the System on the newly installed roof.

19.     In performing the roofing work and the installation of the System, Freedom Forever effectively provided Ms. Pereira with a roofing warranty, but limited the warranty of the new roof to 10 years without expressly informing Ms. Pereira, and did not provide any details of the roofing manufacturer's warranty.

**The Freedom Forever Promise***

We provide a money-back energy production guarantee.

We warrant all of our roofing work.

We warrant and repair the system (as defined below).

We fix or pay for any damage we may cause to your property.

We provide 24/7 web-enabled monitoring at no additional cost.

*Please refer to specific terms in your Supply and Installation Agreement*

ARTICLE 7 - LIMITED WARRANTY

7.1   Free of Material, Construction and Workmanship Defect. Subject to the limitations and other provisions of this Agreement, Freedom Forever warrants that the Work and the System will be free from defects in material, construction and workmanship ten (10) years following the Completed Installation (the "Limited Warranty"). Freedom Forever warrants the roof of the Property against damage and water infiltration at each roofing penetration made by Freedom Forever in connection with the installation of the System (the "Covered Roof Area"); provided however that such roof penetration warranty shall be void and voidable if work is performed by Customer or Customer's contractors on the roof during the ten (10) year period. **This is not a warranty of the entire roof.** If the roof has an existing warranty, Customer has the sole responsibility of confirming with the roofing contractor who performed the work that the installation of the System will not void any warranty. If the Work will void any existing roof warranty, the Customer proceeds knowing that this is the case. Any claim under the Limited Warranty must be made before the expiration of the Limited Warranty.

20.    The System was approved for operation on February 21, 2023.

21.    In 2023, Ms. Pereira began to notice a significant and unexpected increase in her utility bills.

22.    Throughout 2023, Ms. Pereira made multiple attempts to contact Mr. Freitas to address these billing concerns, but her calls and messages went unanswered. She then reached out to Freedom Forever's customer support, where representatives repeatedly assured her that the System was functioning properly and that no issues were detected.

23.    On August 10, 2023, Freedom Forever provided Ms. Pereira with solar production reports, confirming that the System was generating energy. However, despite these assurances, her utility bills remained excessively high, leading her to suspect that the issue might be due to a malfunctioning component.

24.    On or about October 25, 2023, Ms. Pereira received a copy of the loan for the purchase of the System, and she learned for the first time that she would incur a finance charge of $12,578.60 over the 30-year term, in addition to the $35,857.56 amount financed represented in the Agreement.

25.    The initial disbursement to Freedom Forever was for $16,428.78, or 50% of the project cost, which exceeded one-third of the contract price, in violation of Md. Code Ann, Bus. Reg. 8-617.

26.    In early 2024, after persistent follow-ups, a technician from Freedom Forever finally visited Ms. Pereira's property. The technician identified a problem with the System's inverter, which could explain the unusually high energy bills. Despite acknowledging this issue, Freedom Forever took no corrective action to resolve the malfunction.

27.    On February 28, 2024, after exhausting efforts with Freedom Forever, Ms. Pereira contacted Pepco, her utility provider, to investigate whether the issue might be related to the utility's net metering system. A Pepco representative confirmed that her metering system was working properly.

28.    In December 2024, Ms. Pereira's household electrical usage was 3309 kWh, which was nearly double her usage in December 2023.

29.    In January 2025, Ms. Pereira's household electrical usage was 5082 kWh, which was approximately double her usage in January 2024.

30.    Despite these increased costs, Ms. Pereira's household utility needs have remained relatively unchanged over several years.

31.    On or about February 25, 2025, Ms. Pereira, through counsel, mailed Freedom Forever a demand to inspect the System and reimburse her for excess utility

costs incurred due to its malfunction.

32.     On or about March 12, 2025, Freedom Forever responded to Ms. Pereira's demand, stating it denies all allegations raised in the demand letter concerning the System, and asserting that the System met its contractual energy production requirements—achieving approximately 90% of the guaranteed annual kilowatt-hours for the first year—and passed county inspection. Despite this, Freedom Forever did not inspect the System based on Ms. Pereira's concerns.

33.     As a result of the Defendant's conduct, Ms. Pereira is obligated to repay a 30-year loan for a System, in addition to paying her monthly electrical utility bills, which have nearly doubled. This has caused Ms. Pereira to experience undue financial hardship and emotional distress that has physically manifested in loss of sleep, depression, crying, and anxiety.

**COUNT I: DECLARATORY JUDGMENT**

34.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

35.     The Electronic Signatures in Global and National Commerce Act ("ESIGN") governs the validity and enforceability of electronic signatures and electronic records in consumer transactions, codified at 15 U.S.C. § 7001 et seq. To ensure the enforceability of electronic records and signatures, the ESIGN Act mandates specific consumer protections, including:

   a.  That the consumer affirmatively consents to receive electronic disclosures in a conspicuous and informed manner (15 U.S.C. § 7001(c)(1)(A));

   b.  That the consumer, *prior to consenting,* is provided with disclosures in a form

that can be retained and accurately reproduced (15 U.S.C. § 7001(c)(1)(C)(ii)); and

c. That the consumer, *prior to consenting*, receives clear and conspicuous disclosures regarding the right to receive paper copies, withdraw consent, and the hardware/software requirements (15 U.S.C. § 7001(c)(1)(B)).

d. Where a contract or other record relating to a transaction in or affecting interstate or foreign commerce be in writing, **the legal effect, validity, or enforceability of an electronic record of such contract or other record may be denied if such electronic record is not in a form that is capable of being retained and accurately reproduced for later reference by all parties or persons who are entitled to retain the contract or other record.** 15 U.S.C. § 7001(e) (emphasis added).

36.    The Defendant is subject to the requirements of the ESIGN Act because it engages in consumer credit transactions that require written disclosures under federal law, including those mandated by the Truth in Lending Act (TILA).

37.    Defendant failed to obtain Plaintiff's affirmative consent to receive electronic disclosures in a manner that was conspicuous and informed, as required under 15 U.S.C. § 7001(c)(1)(A).

38. Although the salesperson knew that Ms. Pereira did not use computers, did not have a printer, and that English was not her native language, Defendant failed to provide her with copies of the Agreement and other related disclosures in a form that could be retained and accurately reproduced for later reference, as required under 15 U.S.C. § 7001(c)(1)(C)(ii).

39.    The Agreement was executed using DocuSign, but Defendant did not

provide Ms. Pereira with a complete and accurate electronic copy of the signed Agreement that could be saved or printed for future reference.

40.    Defendant failed to provide Ms. Pereira with a clear and conspicuous statement containing required disclosures under 15 U.S.C. § 7001(c)(1)(B), including:

    a. The right to receive disclosures in paper form;

    b. The right to withdraw consent and the procedures for doing so; and

    c. The hardware and software requirements necessary to access and retain electronic records.

    d. The disclosures provided to the Plaintiff were buried within lengthy electronic documents, lacking clear or conspicuous headings or formatting that would make them easily identifiable or understandable.

41.    As a result, Ms. Pereira did not give valid electronic consent, and the electronic disclosures provided by Defendant are invalid and ineffective.

42.    The Maryland Uniform Electronic Transactions Act (MUETA), Md. Code Ann., Com. Law § 21-101 et seq. mirrors the ESIGN Act in imposing certain obligations for electronic contracts. Specifically, MUETA requires the consumer's affirmative consent to conduct transactions electronically, and it mandates that the consumer be able to retain a copy of the Agreement (Md. Code Ann., Com. Law § 21-104(b)).

43.    The ESIGN Act violations are material because they prevented Plaintiff from:

    a. Exercising her right to receive disclosures in paper form or to withdraw consent to electronic disclosures;

    b. Retaining accurate copies of the loan documents and related disclosures; and

    c. Making an informed decision regarding the credit transaction, including the

ability to compare alternative credit terms.

44. Defendant's failure to comply with the ESIGN Act caused Ms. Pereira particularized and concrete harm, including but not limited to:

 a. Being misled into consenting to electronic disclosures without informed consent, thus undermining her ability to make an informed decision.

 b. Deprivation of accurate records of the loan, which affected Plaintiff's ability to understand and enforce her contractual rights.

 c. Informational injury due to the lack of clear and conspicuous disclosures, which prevented Plaintiff from understanding her rights under federal law.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

 A. That Defendant violated the ESIGN Act;

 B. That Plaintiff did not give valid electronic consent under the ESIGN Act;

 C. That the electronic disclosures and signatures are invalid and ineffective for purposes of satisfying the disclosure requirements of TILA;

 D. That the Agreement is void and unenforceable due to non-compliance with the ESIGN Act;

 E. Attorney's fees and costs;

 F. Such other relief as the Court deems just and proper.

## COUNT II: Breach of Express and Implied Warranties
### (Md. Code Ann., Com. Law §§ 2-313, 2-314, 2-315)

45. The preceding allegations of this Complaint are reiterated and incorporated by reference as if fully set forth herein.

46. On or about July 13, 2022, Plaintiff electronically signed an Agreement with Defendant Freedom Forever for the sale and installation of the System, including tangible

components such as solar panels, an inverter, and related equipment. Plaintiff did not fully know or understand what she was signing.

47.    These tangible components of the System constitute "goods" within the meaning of Md. Code Ann., Com. Law § 2-105(1), and the transaction qualifies as a sale of goods under § 2-102. While the purported contract also involved installation services, the sale of goods was the dominant aspect of the transaction.

48.    Freedom Forever is a merchant with respect to the System and its related equipment under § 2-104(1) and thus is subject to the obligations and warranties imposed by Maryland's Commercial Law Article, Title 2.

49.    Under § 2-313, Freedom Forever made express warranties to Plaintiff, including:

- a 10-year workmanship warranty covering defects in installation;
- a 10-year roof warranty for penetrations made during System installation; and
- promises of System performance and energy savings, including a production guarantee.

50.    Under § 2-314, an implied warranty of merchantability attached to the goods sold. Freedom Forever warranted that the goods would:

- be fit for the ordinary purpose of generating electricity;
- conform to affirmations made on packaging or labels; and
- pass without objection in the trade.

51.    Under § 2-315, an implied warranty of fitness for a particular purpose also attached. Plaintiff made clear her purpose was to lower electricity costs. Freedom Forever, through its agent, selected and installed a System that Plaintiff relied upon as fit for that purpose.

52.    Throughout 2023 and into 2024, Plaintiff experienced significant and unexplained increases in electricity usage and utility costs. She repeatedly reported the

issue to Freedom Forever, raising concerns about possible electrical configuration or installation problems.

53.    Despite her complaints, Freedom Forever failed to conduct a timely inspection or make the necessary repairs. When a technician eventually visited, he identified a faulty inverter—a critical component. Yet Freedom Forever took no corrective action and continued to deny any responsibility.

54.    Freedom Forever's failure to inspect, repair, or honor its obligations constitutes a:

- breach of express warranty under § 2-313;
- breach of the implied warranty of merchantability under § 2-314; and
- breach of the implied warranty of fitness for a particular purpose under § 2-315.

11. As a direct and proximate result, Plaintiff suffered damages including:

- excessive energy bills;
- loss of expected System benefits; and
- emotional distress, inconvenience, and financial strain.

**WHEREFORE**, Plaintiff Elena Pereira requests judgment against Defendant Freedom Forever, LLC, and order an award for actual, statutory and consequential damages in excess of $75,000, to be determined at trial, and for attorney's fees, costs incurred, and court costs, and other assessments proper by law, with legal interest, and for such other and further relief as deemed proper.

### COUNT III: Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (Incorporating Md. Code Ann., Com. Law §§ 2-313, 2-314, 2-315)

55.    The preceding allegations of this Complaint are reiterated and incorporated by reference as if fully set forth herein.

56.    The Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 et seq.,

provides a federal cause of action for consumers who are harmed by a supplier, warrantor, or service contractor's failure to comply with the terms of a written or implied warranty.

57.    Defendant Freedom Forever is a "warrantor" and "supplier" within the meaning of 15 U.S.C. § 2301(4)-(5), and Plaintiff is a "consumer" as defined in § 2301(3).

58.    The System, including panels, inverter, and other hardware, constitutes a "consumer product" under § 2301(1).

59.    Freedom Forever issued a written warranty as defined in § 2301(6), including a:

- 10-year workmanship warranty for the installation;
- 10-year limited warranty on roofing penetrations; and
- performance guarantee regarding energy output.

60.    As described in Count Four, Freedom Forever breached its written and implied warranties as defined by the MMWA by:

- failing to inspect the system after reports of electrical or performance issues; and
- failing to ensure the System performed as warranted.

61.    These acts also constitute violations of the Maryland Commercial Law Article §§ 2-313, 2-314, and 2-315, which are incorporated by reference into the MMWA cause of action under 15 U.S.C. § 2301(d)(1).

62.    The Plaintiff suffered economic losses, diminished System performance, and was deprived of the benefit of her bargain.

**WHEREFORE**, Plaintiff Elena Pereira requests judgment against Defendant Freedom Forever, LLC, and order an award for actual, statutory and consequential damages in excess of $75,000, to be determined at trial, and for attorney's fees, costs incurred, and court costs, and other assessments proper by law, with legal interest, and for such other and further relief as deemed proper.

**Count IV: Violations of the Maryland Consumer Protection Act**
**Md. Code Ann. Com. Law §13-101, et seq. ("MCPA")**

63.     The preceding allegations of this Complaint are reiterated and incorporated by reference as if fully set forth herein.

64.     The Plaintiff is a "consumer" as defined in the MCPA.

65.     The transaction between Plaintiff and Defendant involves "consumer credit", "consumer goods", and "consumer services" as the MCPA defines those terms.

66.     The Defendant is a "person" and a "merchant," as those terms are defined in the MCPA.

67.     The Maryland legislature enacted the MCPA in response to a "mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit." Md. Code Ann., Com. Law § 13-102(a)(1).

68.     The practices of the Defendant are the practices that the MCPA addresses and for which the MCPA gives consumers an avenue of redress.

69.     Under the MCPA, such practices include false oral or written statements that have "the capacity, tendency, or effect of deceiving or misleading consumers." MCPA § 13–301(1).

70.     Under the MCPA, such practices include any "[f]ailure to state a material fact if the failure deceives or tends to deceive;" MCPA § 13–301(3).

71.     MCPA § 13-303(5) states, "A person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in (5) The collection of consumer debts."

72.     MCPA § 13-303(1) states, "A person may not engage in any unfair, abusive,

or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services."

73.     On or about July 13, 2022, Freedom Forever, acting through its agent, Thiego Freitas, solicited the Plaintiff at her home to sell her the System and related services, including a partial roof replacement and tree removal. Mr. Freitas also facilitated and arranged financing through a third-party lender as part of the transaction.

74.     Plaintiff is a 73-year-old senior citizen who lives on a fixed income and rents rooms in her home to make ends meet. At the time of the transaction, she informed Mr. Freitas that she does not regularly use email or computers.

75.     Despite this, the Defendant presented the Plaintiff with a series of electronic documents and directed her to sign them on his computer without clearly explaining their contents or providing any information to her in her native language. Plaintiff did not receive a copy of the loan documents or any of the related disclosures at the time of signing.

76.     Freedom Forever committed the following unfair and deceptive trade practices in violation of § 13-301 of the MCPA, including but not limited to:

   a.   False and Misleading Representations – § 13-301(1), (2), (3):

      1.   Misrepresented that Plaintiff was "signing up for solar" without clearly disclosing that she was executing a binding finance agreement with a 30-year loan.
      2.   Failed to disclose that the loan included substantial finance charges and interest.
      3.   Told Plaintiff that she would save money on electricity when, in fact, her utility bills increased significantly.
      4.   Misrepresented the scope of work covered by the Agreement, omitting costs for tree removal and other associated work.
      5.   Failed to disclose the existence, scope, or cost of financing.

6. Concealed the fact that Plaintiff would be bound to repay nearly $45,000, including interest.
7. Failed to inform Plaintiff of the System's energy production limitations and the impact of partial shading or inverter malfunction.
8. Failed to provide Plaintiff with any of the loan documents at the time of contracting.

b. Violation of Other Laws –

1. Violations of the Maryland Door-to-Door Sales Act, as described *infra*, which violates MCPA § 13-301(14)(iv):
2. Violations of the Maryland Consumer Debt Collection Act, as described *infra*, which violates MCPA § 13-301(14)(iii):
3. Violated the ESIGN Act, 15 U.S.C. § 7001, by failing to obtain informed consent for electronic documents.
4. Violated the MUETA, Md. Code Ann., Com. Law § 21-104, by failing to obtain affirmative consent and provide retainable copies.
5. Violated Md. Code Ann., Bus. Reg. § 8-501(c), by failing to include all contracted work in writing.
6. Violated Md. Code Ann., Bus. Reg. § 8-617, by accepting a deposit in excess of one-third of the total contract price before work commenced.

77.    Plaintiff reasonably relied on the representations and omissions of Defendant and entered into the transaction believing it would reduce her energy costs, not substantially increase them.

78.    As a result of Defendant's deceptive practices, Plaintiff suffered ascertainable losses, including:

- substantial debt and finance charges she did not knowingly incur;

- increased utility bills due to improper or ineffective System installation;

- the costs of tree removal and partial reroofing were not properly disclosed.

- emotional distress, frustration, and confusion associated with the unresponsive conduct of the Defendant.

79.    The MCPA authorizes the Court to grant equitable relief, including rescission, restitution, and injunctive relief, and to award actual damages, attorney's fees,

and enhanced statutory damages for willful conduct under § 13-408.

**WHEREFORE,** Plaintiff Elena Pereira requests judgment against Defendant Freedom Forever, LLC, and order rescission of the Agreement, and order an award for actual, statutory and consequential damages in excess of $75,000, to be determined at trial, and for attorney's fees, costs incurred, and court costs, and other assessments proper by law, with legal interest, and for such other and further relief as deemed proper.

### COUNT V: Violation of the Maryland Consumer Debt Collection Act
### Md. Code Ann., Com. Law § 14-201 et seq.

80.     The preceding allegations of this Complaint are reiterated and incorporated by reference as if fully set forth herein.

81.     The Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 et seq. prohibits collectors from using conduct that violates federal or state law in the collection of consumer debts.

82.     Plaintiff is a "consumer" under § 14-201(b), and the obligation at issue is a consumer debt.

83.     Defendant Freedom Forever is a "collector" under § 14-201(b) and (c), as it retained and accepted funds arising from the extension of consumer credit and has enforced or attempted to enforce the obligation despite Plaintiff's disputes and legal challenges.

84.     Freedom Forever arranged for the Plaintiff to enter into a loan for approximately $45,000 but failed to provide the Plaintiff with the loan documents.

85.     The initial loan disbursement of $16,428.78 exceeds the one-third deposit limit imposed by the Maryland Home Improvement Law, Md. Code Ann., Bus. Reg. § 8-617, which prohibits home improvement contractors from receiving or demanding more

than one-third of the contract price before beginning work.

86.    By knowingly accepting more than one-third of the contract price before commencing performance, Freedom Forever violated § 8-617, thereby rendering the contract partially unenforceable and the debt arising from it illegally procured.

87.    Freedom Forever has nonetheless:

- retained the improperly disbursed loan proceeds;
- denied any obligation to inspect or repair the defective System; and
- arranged for financing and denied responsibility for the loan, despite being the primary beneficiary and originator of the transaction.

88.    These acts constitute violations of § 14-202(8) of the MCDCA, which prohibits claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist, or with reckless disregard as to the validity of the right.

89.    Freedom Forever also violated § 14-202(11) by engaging in conduct that violates the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., including:

- § 1692e(2)(a) by misrepresenting the character, amount, or legal status of any debt;
- § 1692e(2)(b) by misrepresenting any services rendered or compensation which may be lawfully received by the collector for the collection of a debt;
- § 1692e(2)(b) by using deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; and
- § 1692f: by collecting any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

90.    Plaintiff has suffered damages as a result of this unlawful conduct, including economic loss and hardship, emotional distress, and threatened or actual damage to her credit reputation.

**WHEREFORE**, Plaintiff Elena Pereira requests judgment against Defendant Freedom Forever, LLC, and order an award for actual, statutory and consequential

damages in excess of $75,000, to be determined at trial, and for attorney's fees, costs incurred, and court costs, and other assessments proper by law, with legal interest, and for such other and further relief as deemed proper.

### Count VI: Violation of the Maryland Door-to-Door Sales Act ("MDDSA") Md. Code Ann., Com. Law § 14-301 et seq.

91.    The preceding allegations of this Complaint are reiterated and incorporated by reference as if fully set forth herein.

92.    The Maryland Door-to-Door Sales Act ("DDSA"), Md. Code Ann., Com. Law § 14-301 et seq., governs personal solicitations for the sale of goods or services conducted at a consumer's residence and mandates specific disclosures, notices, and cancellation rights.

93.    Freedom Forever, acting through its agent Thiego Freitas, conducted a door-to-door sales solicitation at Plaintiff's home on July 13, 2022, for the purpose of selling the System and related goods and services.

94.    The transaction resulted in the sale of goods and services exceeding $25 in value and was consummated at Plaintiff's home, within the meaning of § 14-301(b).

95.    Freedom Forever failed to comply with multiple mandatory provisions of the DDSA, including:

- failing to provide Plaintiff with a written Notice of Right to Cancel in accordance with § 14-302;
- failing to furnish a contract in a language understandable to the Plaintiff, who was not proficient with electronic documents and digital interfaces;
- failing to honor the mandatory 3-day cooling-off period, as required by § 14-303; and
- failing to clearly and conspicuously disclose Plaintiff's cancellation rights.

96.    The DDSA also prohibits retaining any portion of the contract amount or delivering goods or services until the rescission period has expired, unless waiver

conditions are met, which were not present here.

97.    Because of these violations, the contract was not enforceable during the rescission period, and Plaintiff retained her right to cancel the Agreement and void any related loan obligation.

98.    Freedom Forever's failure to comply with the DDSA renders the contract voidable and independently constitutes a violation of the Maryland Consumer Protection Act under § 13-301(14)(iii).

99.    As a result of Defendant's violations of the DDSA, Plaintiff has suffered damages, including:

- financial obligations under a voidable contract;
- denial of statutory rescission rights; and
- emotional distress, confusion, and frustration.

**WHEREFORE,** Plaintiff Elena Pereira requests judgment against Defendant Freedom Forever, LLC, and order an award for actual, statutory and consequential damages in excess of $75,000, to be determined at trial, and for attorney's fees, costs incurred, and court costs, and other assessments proper by law, with legal interest, and for such other and further relief as deemed proper.

## COUNT VII—Claim for Attorney's Fees Allowed by Law

100.    Under Rule 2-703(b), the Plaintiff includes this separately numbered claim for attorney's fees in this initial pleading. Further, under Rule 2-703(d), the Plaintiff advises the Court and the Defendant that she believes this case is likely to result in a substantial claim for attorneys' fees for services over a significant period.

Respectfully submitted:

By:    */s/ Derek A. Hills*
         Derek A. Hills, Esq.
         The Law Office of Derek A. Hills, LLC
         129 N. West St., Suite 1
         Easton, MD 21601
         Phone: 443-239-4626
         dhills@dahlawoffice.com
         AIS No. 1506160146

         and

         */s/ Peter A. Holland*
         Peter A. Holland
         The Holland Law Firm, P.C.
         914 Bay Ridge Road, Suite 230
         Annapolis, MD 21403
         Telephone: (410) 280-6133
         peter@hollandlawfirm.com
         AIS No. 9212160067

         *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury for all issues so triable.

         */s/ Derek A. Hills*
         Derek A. Hills, Esq.